```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


JANET FAIRBANKS,                  )
                                  )
               Plaintiff,         )
                                  )
vs.                               )    Case No. 06-1206-MLB
                                  )
MICHAEL J. ASTRUE,[1]             )
Commissioner of                   )
Social Security,                  )
                                  )
               Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On January 17, 2006, administrative law judge (ALJ) Wendell

C. Fowler issued his decision (R. at 14-20). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 15, 2000 (R. at 14, 53). At step two, the ALJ found that plaintiff had a severe impairment of degenerative disc disease (R. at 19). At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 15, 19). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past work as a receptionist (R. at 18, 19). Furthermore, at step five, the ALJ also found that plaintiff could perform a significant number of other jobs that exist in the national economy (R. at 18, 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19-20).

### III. Did the ALJ err in his RFC findings?

The ALJ found that plaintiff had an RFC which permitted her to perform light work lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The ALJ determined that plaintiff could stand and/or walk for 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday (R. at 16). The ALJ further determined that plaintiff is limited to work involving no constant repetitive bending or stooping (R. at 18, 19).

The ALJ also included in plaintiff's RFC a limitation of "alternating sitting and standing" (R. at 18, 19). The

5

hypothetical question posed to the vocational expert (VE) included the kind of job that one could "alternate sitting and standing" (R. at 259-260). However, the ALJ never articulated the frequency in which plaintiff would need to alternate between sitting and standing.

The ALJ, in making his RFC findings, specifically referenced the statement made by Dr. Moskowitz that he was surprised that plaintiff is complaining of significant pain with such minimal findings on her evaluation (R. at 15-16, 139-140). Dr. Moskowitz further opined that plaintiff could return to work with certain restrictions, including an inability to stand, walk, or sit for prolonged periods, and a requirement that she be able to alternate sitting, walking, and standing every 30 minutes (R. at 15-16, 142). However, the ALJ, without explanation, did not include this specific limitation in either his RFC findings or in his hypothetical question to the VE.

Plaintiff alleges error by the ALJ for not adopting the specific limitation of Dr. Moskowitz that plaintiff be able to alternate between sitting, standing or walking every 30 minutes. Plaintiff contends that this limitation is patently inconsistent with light work (Doc. 9 at 11).

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work. On the issue of alternating

sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.** It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

SSR 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work. One special situation covered in SSR 83-12 is the need to alternate between sitting and standing. It states as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated

>       position) or the prolonged standing or
>       walking contemplated for most light work.
>       (Persons who can adjust to any need to vary
>       sitting and standing by doing so at breaks,
>       lunch periods, etc., would still be able to
>       perform a defined range of work.)
>           There are some jobs in the national
>       economy--typically professional and
>       managerial ones--in which a person can sit or
>       stand with a degree of choice. If an
>       individual had such a job and is still
>       capable of performing it, or is capable of
>       transferring work skills to such jobs, he or
>       she would not be found disabled. However,
>       most jobs have ongoing work processes which
>       demand that a worker be in a certain place or
>       posture for at least a certain length of time
>       to accomplish a certain task. Unskilled types
>       of jobs are particularly structured so that a
>       person cannot ordinarily sit or stand at
>       will.  In cases of unusual limitation of
>       ability to sit or stand, a VS [vocational
>       specialist] should be consulted to clarify
>       the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4.

In the case of Armer v. Apfel, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time." 2000 WL 743680 at *2. The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant would have to change positions from time to time was vague and did not comply with SSR 96-9p. Id. at *2-3.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow

plaintiff brief changes of position (alternating sitting and standing). The court stated as follows:

> Furthermore, if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise. For example, according to one of the agency's own rulings on sedentary labor, the description of an RFC in cases in which a claimant can perform less than the full range of work "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9P, 1996 WL 374185 (S.S.A.) at *7. **Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added). The court then held that the ALJ made a critical omission in his analysis by not properly defining how often the claimant would need to change positions. 84 Fed. Appx. at *5.

The regulations and case law cited above make clear that the ALJ must be specific in setting forth the frequency of a claimant's need to alternate between sitting and standing. Furthermore, Dr. Moskowitz specifically stated that plaintiff must be able to alternate sitting, standing, and walking every 30 minutes. However, without explanation, the ALJ failed to include with specificity the frequency of plaintiff's need to alternate sitting and standing. Therefore, this case shall be remanded for the purpose of having the ALJ include in his RFC findings and in

his hypothetical question to the VE the specific frequency of plaintiff's need to alternate sitting and standing in order to determine its impact on plaintiff's ability to perform past work and/or other work in the national economy.

**IV. Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v.

Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court does not find any clear errors in the ALJ's credibility analysis.  The ALJ placed great weight on the opinion expressed by Dr. Moskowitz in evaluating plaintiff's credibility.  Plaintiff points to certain evidence, which in her opinion, supports her claims.  However, the court will not reweigh the evidence.  Because this case is being remanded, the ALJ should consider the evidence noted by plaintiff, including the specific limitation provided by Dr. Moskowitz regarding plaintiff's need to alternate sitting, standing, and walking every 30 minutes, when making his credibility determination.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided

to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 23, 2007.

                                  s/John Thomas Reid
                                  JOHN THOMAS REID
                                  United States Magistrate Judge